127 P.3d 208

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Jeffrey Jay ADAMS, Defendant– Respondent.**

**No. 30040.**

Court of Appeals of Idaho.

Jan. 26, 2005.

Review Denied June 8, 2005.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for appellant.

Jeffrey Jay Adams, Kamiah, pro se respondent.

LANSING, Judge.

This is an appeal by the State from an order of the district court granting the defendant Jeffrey Jay Adams' motion for a judgment of acquittal on a charge of being in actual physical control of a vehicle while under the influence of alcohol. The dismissal order was based upon the absence of evidence to show that the vehicle occupied by Adams was operable. We affirm.

## I.

### BACKGROUND

At about 1 a.m. on a December morning a police officer in Kooskia noticed Adams sitting in a vehicle lawfully parked on the side of the street, with the motor running. The officer made contact with Adams, who was in the driver's seat, and ultimately determined that he was intoxicated. Adams was arrested and charged with a felony violation of Idaho Code §§ 18–8004(1)(a) and 18–8005(5), for being in actual physical control of a vehicle while under the influence of alcohol.

At trial, Adams stipulated that he had been under the influence. His defense centered on his assertion that, at the time of his arrest, the vehicle he was occupying was inoperable and therefore not a motor vehicle subject to his control. Adams testified that he had recently purchased the vehicle at a low price because it was nonfunctional due to transmission problems. Adams stated that because of this mechanical deficiency, he had towed the vehicle whenever he moved it—including the move to Avenue A where he was arrested. Adams testified that on the night in question, he had been at a Christmas party at a nearby bar, had arranged for a ride home, and was waiting in the car to keep warm until his ride arrived. Adams also presented the testimony of a woman who said she had agreed to take Adams home that night and of a mechanic who said that he had worked on the vehicle shortly before Adams' arrest. The mechanic testified that the vehicle had a transmission malfunction and that, after working on the car without success, he had helped Adams tow it to the location on Avenue A.

After the close of evidence, Adams moved for a judgment of acquittal on the ground that the car was not a motor vehicle for purposes of the DUI statutes because it was not capable of being self-propelled. The district court agreed and entered an acquittal on the ground that the State had not established that Adams' vehicle was subject to

being driven or controlled. The court noted that if the vehicle had been reasonably capable of being put into operation or if it had been parked on an incline making it capable of coasting, the ruling would have been different. The district court reasoned that the driving under the influence (DUI) statutes are designed to prevent risk to the public from persons operating or controlling motor vehicles and that such risk did not exist where the vehicle was inoperable. The State appeals, contending that the trial court erred because it added to the charged offense an element that is not specified in the statute.

## II.

### ANALYSIS

■ Idaho Code § 18–8004(1) makes it unlawful for a person who is under the influence of drugs or alcohol "to drive or be in actual physical control of a motor vehicle within this state . . . ." Actual physical control is defined as "being in the driver's position of the motor vehicle with the motor running or with the motor vehicle moving." I.C. § 18–8004(5). Relying upon these statutes, the State argues that it met its burden to prove actual physical control with evidence showing that Adams was in the driver's seat with the motor running while in an inebriated state. The State asserts that the trial court's ruling impermissibly added an element that the vehicle be operable or parked on an incline.

■ Idaho courts have not addressed whether a vehicle must be operable in order for an occupant to be convicted for being in actual physical control while under the influence.[1] Plainly, proof of actual driving or operation of the vehicle is not required; the "actual physical control" portion of the statute permits apprehension of intoxicated prospective drivers *before* they place themselves and others at risk by driving. *State v. Smith*, 121 Idaho 20, 24, 822 P.2d 539, 543 (Ct.App.1991). This aspect of the statute is a prophylactic measure that is intended to discourage intoxicated persons from entering

---

1. In *State v. Cheney*, 116 Idaho 917, 782 P.2d 40 (Ct.App.1989), the appellant argued that he could not be convicted for being in actual physical control because the vehicle was inoperable due to the loss of transmission fluid. We found it unnecessary to reach that issue because the trial evidence did not support Cheney's contention that the automobile could not be driven.

**308**

motor vehicles except as passengers. *In re Vogt*, 117 Idaho 545, 546, 789 P.2d 1136, 1137 (1990); *In re Clayton*, 113 Idaho 817, 819, 748 P.2d 401, 403 (1988).

Other jurisdictions interpreting similar legislation have generally concluded that actual physical control requires that the vehicle be capable of operation, of readily being made operable, or of being put into motion as by coasting. *See Hodge v. State*, 27 Ark.App. 93, 766 S.W.2d 619 (1989) (opining, "we think it possible for a vehicle to be so incapable of operation that subsequent control over it would fall outside the purview of the statute"); *Bodner v. State*, 752 A.2d 1169 (Del. 2000) (holding that a person cannot be properly convicted for having actual physical control of an inoperable motor vehicle where the inoperability is more than a temporary condition that can be easily remedied); *State v. Butler*, 108 S.W.3d 845, 852 (Tenn.2003) (applying test of whether vehicle was reasonably capable of being operated or rendered operable); *State v. Carter*, 889 S.W.2d 231 (Tenn. Crim.App.1994) (holding that where there was no evidence that the vehicle could be driven under its own power or that it was pushed or would be pushed by another person, the evidence was insufficient to convict the occupant for being in physical control); *State v. Smelter*, 36 Wash.App. 439, 674 P.2d 690 (1984) (applying test of whether vehicle was reasonably capable of being operated or rendered operable).

■ We agree with the analysis of these courts. The "actual physical control" portion of the DUI statute presupposes the presence of a vehicle that can be controlled. The threat that is targeted by this part of the DUI statute is the danger that a parked vehicle will be put in motion by an intoxicated occupant and thereby pose a risk to the safety of the occupant and others. This targeted risk does not exist when the vehicle is not operable, nor subject to being readily made operable, nor in motion (whether by coasting or being pushed), nor at risk of coasting. If a vehicle cannot be moved it is

not a motor vehicle capable of being "controlled," and the reason for the statutory prohibition does not exist. Consequently, the statute is not violated when the vehicle is not in motion or susceptible of easily being placed in motion.[2]

This interpretation recognizes that the targeted risk remains present, and prosecution is permissible, when the reason for a vehicle's inoperability is a temporary condition that can be quickly remedied, as when a wheel has been removed to change a flat tire or the vehicle has a dead battery that can be jump-started. In the words of the *Smelter* court, "The 'reasonably capable of being rendered operable' standard distinguishes a car that runs out of gas on a major freeway near several exits and gas stations from a car with a cracked block which renders it 'totally inoperable.'" *Smelter*, 674 P.2d at 693.

■ Because most DUI stops occur as a result of an officer's observation of erratic driving, we expect that cases where the operability of the vehicle is at issue will be rare. In those few cases where the vehicle is at rest when first observed by an officer, any question whether the vehicle is disabled will often be resolved by a few questions from the officer to occupants concerning the vehicle's condition and how and when it arrived at its present location. When there is evidence from which a fact-finder could sensibly conclude that the vehicle was reasonably capable of being rendered operable, the issue is for the jury.

In the present case, the State established that Adams was seated in the driver's seat of his vehicle with the motor running, but there was no direct evidence that the vehicle was capable of moving, nor any circumstantial evidence from which operability could be inferred. The defendant presented considerable evidence showing that his vehicle was mechanically disabled and could not be made operable without significant effort and cost. It was established that Adams' car was not

---

2. Of course, if a driver in an intoxicated condition wrecks the vehicle and thereby disables it, the immobility of the vehicle at the time police arrive will not immunize the driver from prosecution. Circumstantial evidence that an intoxicated individual was driving at the time of an accident and/or admissions made by the individual can suffice to prove a DUI. *See, e.g., State v. Koch*, 115 Idaho 176, 180, 765 P.2d 687, 691 (Ct.App.1988).

parked on an incline, nor being coasted, towed, or pushed. We agree with the district court's assessment that there was no substantial evidence from which a jury could reasonably have found Adams guilty of the charged offense. Accordingly, the district court did not err in entering a judgment of acquittal.

The judgment of the district court is affirmed.

Chief Judge PERRY and Judge GUTIERREZ concur.

